UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ANTHONY LAMONT SINGLETON,<br>     Petitioner, | )<br>)<br>) |
| v. | )  Nos. 2:12-cr-58, 2:16-cv-199 |
| | )  Judge Greer |
| UNITED STATES OF AMERICA,<br>     Respondent. | )<br>) |

**RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION FILED PURSUANT TO 28 U.S.C. § 2255**

The United States of America opposes petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner has not established any basis upon which § 2255 relief could be granted, so his motion should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner pleaded guilty and was convicted of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). (R. 31, Judgment.) Based on his prior Tennessee convictions for selling cocaine and committing aggravated assault, his base offense level was 24, pursuant to U.S.S.G. § 2K2.1(a)(2).[1] (Presentence Report at ¶¶ 18, 41, 52.) The Court ultimately sentenced petitioner to 110 months' imprisonment, at the bottom of the Guidelines range applicable to him. (*Id.* at ¶ 103; R. 31, Judgment.) Petitioner sought to appeal, despite the appeal-waiver provision in his plea agreement, and the Sixth Circuit affirmed his conviction and sentence in May 2014. (R. 42, Sixth Circuit Order.)

---

[1] The Guidelines set a general base offense level of 14 for violating 18 U.S.C. § 922(g). U.S.S.G. § 2K2.1(a)(6). For offenders with one prior conviction for either a "crime of violence" or "controlled substance offense," the base offense level increases to 20. U.S.S.G. § 2K2.1(a)(4). Offenders with two such convictions have a base offense level of 24. U.S.S.G. § 2K2.1(a)(2).

More than two years later, in June 2016, petitioner filed a motion pursuant to 28 U.S.C. § 2255, seeking a lesser sentence in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). (R. 46, § 2255 Motion.) The United States now responds.

## STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief, a petitioner must establish (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). He "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## ARGUMENT

Petitioner claims that his aggravated assault conviction no longer qualifies as a crime of violence post-*Johnson* and that he is thus entitled to resentencing. (R. 46, § 2255 Motion at 4.) However, the rule upon which he relies—the rule announced in *Johnson*—is procedural as applied to the Guidelines and thus does not apply retroactively on collateral review. Moreover, his aggravated assault conviction was, and still remains, a crime of violence under both the enumerated-offense and use-of-force clauses, so *Johnson*'s invalidation of the residual clause does not alter his sentence in any way. Petitioner's motion should be denied as meritless.

1. <u>As applied to the Guidelines, the rule announced in *Johnson* is procedural and thus does not apply retroactively on collateral review.</u>

Petitioner seeks a lesser sentence in light of the Supreme Court's determination in *Johnson* that "imposing an increased sentence under the residual clause of the Armed Career

2

Criminal Act [("ACCA"), 18 U.S.C. § 924(e),] violates the Constitution's guarantee of due process."[2] 135 S. Ct. at 2563.  Although the Supreme Court expressly limited its analysis to the residual clause of the ACCA, *id.*, the Sixth Circuit later determined that *Johnson*'s holding "applies equally to the residual clause of the [crime-of-violence definition in the] Guidelines" and renders that clause unconstitutionally vague.[3] *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016); *but see Beckles v. United States*, 136 S. Ct. 2510 (2016) (granting certiorari to resolve, *inter alia*, whether *Johnson*'s holding applies to the residual clause of U.S.S.G. § 4B1.2(a)(2)). Significantly, *Pawlak* involved applying *Johnson* on direct review to a Guidelines sentence that was not yet final. *Pawlak*, 2016 WL 2802723, at *1.

Because petitioner's judgment has already become final, *Johnson* could only make him eligible for § 2255 relief if it announced a rule that the Supreme Court has made retroactively applicable to the Guidelines on collateral review.  *E.g.*, *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).  Petitioner has not shown, and *Pawlak* did not hold, that *Johnson* applies retroactively to the Guidelines on collateral review.  *See generally In re Griffin*, 823 F.3d 1350, 1355-56 (11th Cir. 2016) (finding that applying *Johnson* to the Guidelines would result in a new procedural rule

---

[2] The ACCA requires a fifteen-year minimum sentence for a felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

[3] The relevant Guidelines define "crime of violence" as "any offense . . . punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary of a dwelling, arson, or extortion, [or] involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). U.S.S.G. § 4B1.2(a).

that does not apply retroactively on collateral review); *accord Frazier v. United States*, No. 1:09-cr-188, 2016 WL 885082, at *4-*6 (E.D. Tenn. Mar. 8, 2016) (Collier, J.) (same). *But see In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) (finding that applying *Johnson* to the Guidelines results in a new substantive rule that applies retroactively on collateral review).

When the Supreme Court announces a new rule of constitutional law, that rule only applies on collateral review "in limited circumstances." *Schriro*, 542 U.S. at 351. One of those limited circumstances is when the rule is substantive—*i.e.*, "it alters the range of conduct or the class of persons that the law punishes," *id*. at 353—because "[n]ew substantive rules generally apply retroactively." *Id*. at 351; *accord Montgomery v. Louisiana*, 136 S. Ct. 718, 729 (2016) ("[T]he Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final."). New rules that are procedural—*i.e.*, ones that "regulate only the manner of determining the defendant's culpability"—do not usually apply retroactively. *Schriro*, 542 U.S. at 353; *accord Teague v. Lane*, 489 U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before[hand]."). New procedural rules only apply retroactively if they are "watershed" rules which "implicat[e] the fundamental fairness and accuracy of the criminal proceeding."[4] *Saffle v. Parks*, 494 U.S. 484, 495 (1990); *accord Bousley v. United States*, 523 U.S. 614, 620 (1998) (finding "no reason to apply [a] rule retroactively on habeas review" unless its absence would "seriously diminish" the "likelihood of an accurate conviction."). Whether a new rule is substantive or procedural turns on the "function of the rule at issue." *Welch v. United States*, 136 S. Ct. 1257, 1266 (2016).

---

[4] "The only example of such a watershed rule ever cited by [the Supreme Court] is the right to counsel, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Fulcher v. Motley*, 444 F.3d 791, 815 (6th Cir. 2006).

4

The function of the *Johnson* rule is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA. In the ACCA context, sentencing a defendant based on the residual clause functions to raise the statutory minimum and maximum terms of imprisonment so that the defendant is exposed to a wholly new and unauthorized range of sentencing options. *Welch*, 136 S. Ct. at 265. That error directly implicates the separation-of-powers principle that federal courts may not impose sentences unauthorized by Congress. *See id*. at 1268 ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute."). As such, applying *Johnson* to the ACCA alters the "substantive reach" of the statute and thereby creates a new substantive rule. *Id*. at 1265; *accord In re Watkins*, 810 F.3d 375, 383-84 (6th Cir. 2015). Application of *Johnson* to the Guidelines, however, does not functionally result in a substantive change in the law. "Unlike the ACCA—a statute that shifts the defendant's penalty range and minimum and maximum terms of imprisonment—the Guidelines merely guide the execution of a court's discretion in selecting the appropriate sentence from within an otherwise stagnate range of lawful penalties." *Frazier*, 2016 WL 885082 at *5. The Guidelines "do not require a district court to give a defendant a higher sentence, nor do they allow a judge to impose a harsher sentence that was necessarily unavailable before. The[y] merely advise a district court how to wield its discretion." *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014). Indeed, Guidelines sentences must always be within the limits set by Congress. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines only operate "within the broad limits established by Congress").

An erroneous application of the Guidelines—or a sentence imposed pursuant to the Guidelines' residual clause—does not result in a sentence outside the statutory boundaries set by Congress. *See*, *e.g.*, *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (*en banc*)

5

Case 2:12-cr-00058-JRG-MCLC   Document 49   Filed 08/24/16   Page 5 of 11   PageID #: 230

(explaining that a 360-month sentence imposed pursuant to an erroneous career-offender classification was "not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority"); *In re Griffin*, 823 F.3d at 1355 ("An error in calculating a defendant's guidelines sentencing range does not (and could not) alter the statutory sentencing range set by Congress for the crime within which the sentencing court may impose a sentence, and it would not (and could not) produce a sentence that exceeds the statutory maximum."). Because a Guidelines provision cannot "mandate or authorize any sentence," *Welch*, 136 S. Ct. at 1265, an erroneous Guidelines calculation does not result in a sentence outside the statutorily-authorized range. The function of the Guidelines range is to provide a framework for the sentencing court's exercise of discretion under 18 U.S.C. 3553(a). It relates to the "manner of determining" the defendant's sentence, *Welch*, 136 S. Ct. at 1265, which is the function of a procedural rather than a substantive rule. *See*, *e.g.*, *Humphress v. United States*, 398 F.3d 855, 862 (6th Cir. 2005) (finding that the rule announced in *United States v. Booker*, 543 U.S. 220 (2005)—*i.e.*, that Guidelines are merely advisory and not mandatory—is a non-watershed, procedural rule); *Goode v. United States*, 305 F.3d 378, 385 (6th Cir. 2002) (finding that the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—*i.e.*, that any fact (other than a prior conviction) which increases a statutory penalty range must be found by a jury beyond a reasonable doubt—is a non-watershed, procedural rule).

The new procedural rule that results from extending *Johnson*'s holding to the Guidelines is not "watershed," because an error in calculating an advisory Guidelines range does not render the resulting sentence unfair or unreliable in the way that a complete deprivation of the right to counsel renders a trial unfair and unreliable. *See*, *e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1143 (11th Cir. 2014) (*en banc*) (noting that even a "substantively unreasonable sentence does

6

not result in a 'complete miscarriage of justice' if that sentence is less than the statutory maximum sentence Congress has enacted"). *Johnson* did not recognize, for the first time, that the due process clause prohibits vague penal laws; rather, it merely extended that well-recognized constitutional principle, *see*, *e.g.*, *Lanzetta v. New Jersey*, 306 U.S. 451, 458 (1939), to hold a particular statutory enhancement unconstitutionally vague. *See Johnson*, 135 S. Ct. at 2577. New rules that merely apply a pre-existing legal principle in a new context do not "effect a sea change in criminal procedure comparable to that wrought by *Gideon*." *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013).

In sum, while *Johnson* effected a substantive change in the law by altering the range of lawful sentences under the ACCA, extension of that same reasoning to the Guidelines only results in procedural changes to the sentencing process. *In re Griffin*, 2016 WL 3002293 at *5; *accord Frazier*, 2016 WL 885082 at *6. As such, *Johnson* does not apply retroactively on collateral review of Guidelines sentences. *See In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015) ("Even if we assume that the new substantive rule announced in *Johnson* also applies to the residual clause of section 4B1.2(a)(2) of the Sentencing Guidelines, . . . [n]o combination of holdings of the Supreme Court 'necessarily dictate' that *Johnson* should be applied retroactively on collateral review"); *In re Gieswein*, 802 F.3d 1143, 1147-48 (10th Cir. 2015) (same); *Richardson v. United States*, 623 F. App'x 841, 842 (8th Cir. 2015) (denying authorization to pursue a *Johnson*-based successive 28 U.S.C. § 2255 challenge to a defendant's Guidelines range calculation because *Johnson* did not announce a substantive rule with respect to the Guidelines). *Johnson* does not provide a basis on which petitioner can seek § 2255 relief.

7

2. <u>In any event, *Johnson* does not alter petitioner's Guidelines range in any way.</u>

*Johnson* only invalidated the residual clause of the Guidelines. *Pawlak*, 822 F.3d at 911; *accord Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."); *United States v. Smith*, 817 F.3d 492, 493 (6th Cir. 2016) (rejecting vagueness challenge to the ACCA's enumerated-offense clause). Offenses that qualify as crimes of violence under either the Guidelines' use-of-force clause or the enumerated-offense clause remain qualifying predicates post-*Johnson*. *See*, *e.g.*, *United States v. Priddy*, 808 F.3d 676, 683 (6th Cir. 2015) (post-*Johnson*, "a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated-offense clause"). Moreover, *Johnson* "has no bearing" on the designation of drug convictions as predicate offenses. *United States v. Darling*, 619 F. App'x 877, 880 n.5 (11th Cir. 2015); *accord United States v. Jenkins*, 613 F. App'x 754, 755 (10th Cir. 2015).

Petitioner does not dispute that his prior convictions for selling cocaine constitute a controlled substance offense as defined by U.S.S.G. § 4B1.2(b); he argues only that a conviction used to support a § 2K2.1 enhancement was "treated as a 'crime of violence' under the residual clause." (R. 46, § 2255 Motion at 4.) He necessarily refers to his aggravated assault conviction.

That conviction qualifies as a crime of violence under both the enumerated-offense and use-of-physical-force clauses. Aggravated assault is specifically listed in the Guidelines' authoritative commentary as a crime of violence, U.S.S.G. § 4B1.2, cmt. n.1, and the Sixth Circuit has specifically held that the knowing/intentional variant of Tennessee aggravated assault satisfies the "generic definition of aggravated assault" and thus "qualifies as a crime of violence under Application Note 1 of U.S.S.G. § 4B1.2." *United States v. Cooper*, 739 F.3d 873, 878 (6th

8

Cir. 2014). The knowing/intentional variant of Tennessee aggravated assault also categorically qualifies as a violent felony under the use-of-force clause. *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016). Tennessee defines the offense of aggravated assault, in relevant part, by stating that a person commits the offense if he

>  (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
>  (A) Causes serious bodily injury to another; or
>  (B) Uses or displays a deadly weapon; or
>
>  (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
>  (A) Causes serious bodily injury to another; or
>  (B) Uses or displays a deadly weapon.

Tenn. Code Ann. § 39-13-102(a). Tennessee law provides that a violation of "subdivision (a)(1) . . . is a Class C felony," while a violation of "subdivision (a)(2) is a Class D felony." Tenn. Code Ann. § 39-13-102(d)(1). The statute is divisible because it lists several different variants of the offense. *See*, *e.g.*, *Cooper*, 739 F.3d at 879 (recognizing that Tenn. Code. Ann. "§ 39-13-102 can be offended in a number of ways").

Although the Sixth Circuit has held that the Class D variant does not qualify because it only requires reckless conduct, *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011), the Class C variant clearly qualifies under the use-of-physical-force clause because it contains as an element either the use or threatened use of violent force: a defendant must knowingly or intentionally commit an assault which either (A) causes serious bodily injury to another, or (B) is accomplished by the use or display of a deadly weapon. The first of those options necessarily involves the use of violent force, since Tennessee defines "serious bodily injury" as "bodily injury which involves: (A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; or (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental

9

faculty." Tenn. Code Ann. § 39-11-106(34). Causing such an injury necessarily requires the use of violent force—*i.e.*, force that is capable of causing physical pain or injury. *See United States v. Anderson*, 695 F.3d 390, 400 (6th Cir. 2012) ("We hold that one can knowingly cause serious physical harm to another only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force."); *accord De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011). Similarly, a conviction under the deadly weapon variant necessarily involves the use or threatened use of violent force, since a "deadly weapon" is a "firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or . . . [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code. Ann. § 39-11-106(5). Use of such a weapon necessarily involves the use of force that is capable of causing physical injury to another—*i.e.*, violent force—and merely displaying such a weapon during an assault is a threatened use of that same violent force. *See United States v. Arender*, 560 F. App'x 648, 649 (8th Cir. 2014) (finding that a Tennessee aggravated assault conviction based on the display of a deadly weapon had "as an element the threatened use of physical force against another person").

In sum, any Class C felony conviction for Tennessee aggravated assault necessarily involves the use or threatened use of violent force, and state conviction records unequivocally establish that petitioner was convicted of the Class C variant—*i.e.*, the knowing/intentional variant—of Tennessee aggravated assault. (*See* Judgment, attached.) As a result, *Johnson* does not affect the calculation of petitioner's base offense level in any way.

## CONCLUSION

In sum, petitioner has not established any basis on which § 2255 relief could be granted. Accordingly, his § 2255 motion should be denied as meritless.

> Respectfully submitted,
>
> Nancy Stallard Harr
> United States Attorney
>
> By:   *s/ J. Gregory Bowman*
> J. Gregory Bowman
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on August 24, 2016, this response was filed electronically, and notice of its filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A copy was also sent to petitioner by regular United States mail, postage prepaid, addressed as follows:

Anthony Singleton
No. 45105-074
F.C.I. Yazoo City Medium
P.O. Box 5888
Yazoo City, MS  39194

> *s/ J. Gregory Bowman*
> J. Gregory Bowman
> Assistant United States Attorney